UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DANDRIDGE E. WILKERSON, | : | |
| Plaintiff(s), | : | Civil Action No. 13-861 (JAP) |
| v. | : | |
| NISSAN NORTH AMERICA, INC. | : | **OPINION** |
| Defendant(s). | : | |

PISANO, District Judge.

Plaintiff Dandridge Wilkerson brings this action alleging that his former employer, Nissan North America, Inc. ("Nissan"), discriminated against him on the basis of his race and disability in violation of New Jersey's Law Against Discrimination, N.J.S.A. N.J.S.A. 10:5–1, *et seq*. Presently before the Court is Nissan's motion to stay the matter and compel arbitration. For the reasons below, Nissan's motion is granted.

I.  BACKGROUND

According to the complaint, Plaintiff, who is African American, commenced his employment with Nissan in or about May 2003. He worked in the receiving department of Nissan's warehouse located in Somerset, New Jersey. In early 2005, he was offered position in the shipping department as a warehouse operator. McClintock Cert. Ex. A. Plaintiff worked in this position until 2009, when his job duties changed to "picking parts." Compl. ¶ 18. In 2011, Plaintiff returned to the receiving department, and he returned to operating a

forklift. *Id.* ¶ 19. He remained in the receiving department until his termination in March 2012. *Id.* ¶ 20.

In August 2008, Plaintiff was diagnosed with Type II diabetes. He was diagnosed with a hernia in 2009. *Id.* ¶ 33, 40. As a result of his diabetes, he was required to take frequent bathroom breaks while at work. *Id.* at 33. His hernia apparently prevented him from heavy lifting. *See id.* at 40-43. Plaintiff alleges that he requested accommodations for these conditions, but instead he was written up for poor job performance and suspended in January 2012. *Id.* ¶ 44. Plaintiff was ultimately terminated in March 2012. *Id.*

As a condition of his employment, Plaintiff executed a Mutual Agreement to Arbitrate Claims in February 2005. *Id.* Ex. B ("Arbitration Agreement"). Pursuant to this agreement, the parties agreed that, with limited exceptions not relevant here, "any and all disputes arising out of or related to the Employee's employment at Nissan, including termination of that employment, that are not resolved internally through the Employee Problem Resolution Procedure shall be submitted to final and binding arbitration." The agreement expressly provides that disputes subject to arbitration include "all statutory, contractual and/or common law claims, disputes, complaints and or controversies," including "claims of discrimination, harassment or retaliation (including, but not limited to, claims based upon age, disability, marital status, medical condition, national origin, race, color, religion, sex, sexual orientation, veteran status or as a result of reporting an ethical violation" and "claims for violation of any federal, state, local or other governmental law, statute, regulation or ordinance." Arbitration Agreement at § 1.

## II. ANALYSIS

Under the Federal Arbitration Act ("FAA"),

2

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

There are two questions that a court examines when addressing a motion to stay in favor of arbitration. First, the Court must first determine whether the agreement to arbitrate is valid. *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007). An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation or any contract." 9 U.S.C. § 2. "[T]he [Federal Arbitration Act] establishes a strong federal policy in favor of the resolution of disputes through arbitration," and such agreements are presumptively enforceable. *Brennan v. Cigna Corp.*, 282 Fed. Appx. 132, 135 (3d Cir.2008). *See also Great Western Mortg. Corp. v. Peacock*, 110 F.3d 222 n. 25 (3d Cir.1997).

Second, a court must decide whether the dispute falls within the scope of the arbitration agreement. It is well established that "the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. Under New Jersey law,[1] "[i]n determining whether a particular dispute is encompassed by an arbitration

---

[1] As both parties cite to New Jersey decisions in their briefs, there appears to be no dispute that New Jersey law applies in this case.

3

provision, as in construing any other contractual provision, a court's 'goal is to discover the intention of the parties[,]' which requires consideration of the 'contractual terms, the surrounding circumstances, and the purpose of the contract.'" *Angrisani v. Fin. Tech. Ventures, L.P.*, 402 N.J.Super. 138, 952 A.2d 1140, 1146 (App.Div. 2008) (quoting *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 633 A.2d 531, 535 (N.J.1993)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir.2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2425, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA requires a court to stay a proceeding in favor of arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3.

There is no disagreement between the parties here with respect to the second prong of the analysis, *i.e.*, that the scope of the Arbitration Agreement, if valid, covers the Plaintiff's claims. *See* Pl. Brf. at 7 ("Wilkerson does not dispute that his claims would fall within Nissan's agreement, if such were valid.")  Rather, Plaintiff argues that there are two independent reasons that the agreement cannot be enforced in this case.  First, Plaintiff claims that the Arbitration Agreement and Procedures ("Procedures") create a question as to whether plaintiff agreed to arbitrate his claims against Nissan.  Second, Plaintiff argues that compelling arbitration would prevent Plaintiff from pursuing his claims because the arbitration costs are prohibitively expensive, and the Arbitration Procedures require Plaintiff to share equally the costs and fees of the arbitrator as well as pay for his own attorney. Neither argument, however, has merit.

In support of his first argument, Plaintiff points to Paragraphs 1(b) and (c) of the Procedures and claims that these paragraphs "afford [him] the discretion of using arbitration." Paragraph 1 of the Procedures addresses demands for arbitration, notice of arbitration and time limits. McClintock Cert. Ex. C. Subparagraph (b) describes how a former employee may give notice of his intention to pursue binding arbitration by completing and submitting a letter to the Human Resources Director requesting binding arbitration. Subparagraph (c) permits a former employee who is disputing an involuntary termination to skip Nissan's internal resolution mechanism and go directly to arbitration. Contrary to Plaintiff's arguments, neither subparagraph suggests that a former employee such as Plaintiff has the discretion to file his claims against Nissan in court rather than proceeding to arbitration.

Turning to Plaintiff's second argument, a party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood. *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). To that end, Plaintiff has submitted a certification stating that he is unemployed and collecting unemployment benefits. Plaintiff, however, despite asserting that arbitration would be prohibitively expensive, admits that he has not determined how much the fees and costs of the arbitrator actually would be. Pl. Brf. at 10, Wilkerson Cert. ¶ 18. Further, the Court notes that the Arbitration Procedures provide that if Plaintiff "demonstrates financial hardship in connection with paying [his] share of the arbitrator's costs and fees, the arbitrator may order [Nissan] to pay [Plaintiff's] share" of the fees that exceed an amount equal to two weeks of Plaintiff's wages. McClintock Ex. C, ¶ 12. Additionally, Plaintiff may recover his attorneys' fees and expenses if he prevails, as the Procedures authorize the arbitrator to "award any

remedy allowed by the applicable law, including … attorneys' fees and expenses." *Id.* ¶ 9(c). Given these provisions in the Procedures, the Court finds that Plaintiff has failed to carry his burden of showing the likelihood that arbitration would be prohibitively expensive.

## III. CONCLUSION

For the reasons above, the Court grants Nissan's motion to compel arbitration, and this matter will be stayed pending such arbitration. An appropriate Order accompanies this Opinion.

      /s/ JOEL A. PISANO
United States District Judge

Dated:  June 17, 2013